**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| PHYLLIS E. BELCHER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:14-cv-10-WTL-MJD ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Phyllis E. Belcher requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Belcher filed an application for DIB on March 24, 2011, alleging disability beginning December 5, 2003. Belcher's application was initially denied on April 29, 2011, and again upon reconsideration on July 21, 2011. Thereafter, Belcher requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on May 21, 2012, before ALJ Monica LaPolt in Indianapolis, Indiana. During the hearing, Belcher amended her alleged onset date to July 18, 2008, rather than December 5, 2003.[1] Matthew C. Lampley also testified as a vocational

---

[1] Belcher previously filed an application for DIB on April 27, 2005, and on July 17, 2008, ALJ Andrew Tranovich concluded that she met the requirements for disability between December 5, 2003, and May 31, 2005. Belcher appealed this decision (due to the closed period of disability finding), but the Appeals Council declined review. This led Belcher to amend her alleged onset date for her second application to July 18, 2008, the day after the ALJ issued his decision on her previous application.

expert. On July 26, 2012, the ALJ issued a decision denying Belcher's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on November 12, 2013. This action for judicial review ensued.

## II. EVIDENCE OF RECORD

The evidence of record is well documented in the ALJ's decision and need not be recited here. Facts relevant to Belcher's argument are, however, noted in the discussion section below.[2]

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her

---

[2] The Court also notes that, attached to the Defendant's response (and cited to in her opposing brief), was the decision issued by ALJ Tranovich on July 17, 2008, granting in part and denying in part Belcher's previous application for DIB. That decision, however, was not a part of the record evidence in this case. As a result, Belcher filed a motion to strike the report or to remand the matter to the Commissioner. The Court granted the motion to strike (Dkt. No. 24) and struck the extra-record evidence. The Court also struck all explicit and implicit references to ALJ Tranovich's decision in the Defendant's brief. The Court thus did not consider the exhibit in ruling on this matter.

ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found that Belcher's date last insured was September 30, 2010. Thus, the ALJ had to determine whether Belcher was disabled at any time between July 18, 2008, her (revised) alleged onset date, and September 30, 2010.

At step one, the ALJ found that Belcher had not engaged in substantial gainful activity since July 18, 2008, her alleged onset date. At step two, the ALJ concluded that Belcher suffered from the following severe impairments: A history of rotator cuff tear status post repair; diabetes mellitus; congestive heart failure; obesity; and hypertension. Among other things, the ALJ found that Belcher's "degenerative disc disease and/or neck or back problems" were not severe impairments. Tr. at 22. At step three, the ALJ determined that Belcher's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Belcher had the residual functional capacity ("RFC") to perform light work, subject to the following:

> [O]nly intermittent (not repetitive) occasional overhead reaching and pushing or pulling with the right upper extremity; . . . frequent balancing, stooping, kneeling, crouching, and climbing of ramps and stairs; no crawling, no climbing of ladders, ropes, or scaffolds, or working at unprotected heights; with no more than moderate exposure to extreme cold and heat; no more than moderate exposure to wetness [and] humidity; no more than moderate exposure to excessive vibration; and no more than moderate exposure to airborne irritants, such as fumes, odors, dusts, and gases.

*Id.* at 25. Given this RFC, and taking into account Belcher's age, education, and work experience, the ALJ determined at step five that Belcher could perform jobs existing in significant numbers in the national economy, those being a nut and bolt assembler, a bench assembler, or a hostess. Accordingly, the ALJ concluded that Belcher was not disabled as defined by the Act from July 18, 2008, through September 30, 2010, her date last insured.

## V.  **DISCUSSION**

Belcher argues only that her "lumbar-spine impairment" and/or her "cervical-spine impairment" were severe, and the ALJ erred in concluding otherwise. Belcher's Br., Dkt. No. 14 at 4. The Court does not agree.

Regarding her back and neck problems, the ALJ concluded as follows:

> I note that the medical evidence of record contains references or statements by the claimant of such a history; however, for the relevant time period, the record is devoid of any objective medical evidence . . . , i.e. x-ray's or magnetic resonance imaging (MRI) studies of such . . . impairments. While it appears she does have a remote history of treatment for neck/back impairments, as there is no documented treatment for the relevant time period, I find said impairments are not severe. Moreover, I do note that the claimant's attorney failed to even allege any back and/or neck impairments.

Tr. at 22.

"To be found disabled, an individual must have a medically determinable 'severe' physical or mental impairment or combination of impairments that meets the duration requirement." S.S.R. 96-3p. A severe impairment must be supported by "objective medical evidence, that is, medical signs and laboratory findings." 20 C.F.R. § 404.1512(b)(1). "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b). "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques [i.e., chemical tests, X-rays, etc.]." *Id.* at § 404.1528(c).

Belcher argues that the ALJ erred in finding that there was no objective medical evidence regarding her back impairment for the time period in question. In her brief, Belcher cites to three medical records that were not mentioned by the ALJ that, according to her, demonstrate that her back impairment was indeed severe: (1) An x-ray from March 2011, noting a previous cervical fusion;[3] (2) a note from her treating physician, Dr. Cynthia Reed, from September 2009,

---

[3] On March 8, 2011, Belcher received treatment for dizziness and "a blood pressure issue." Tr. at 303. An x-ray of Belcher's chest was taken, and the radiologist stated in his report that a "[l]ower cervical spine fusion plate and screws [were] noted." *Id.* at 303.

indicating that Belcher had radiculopathy; and (3) a note from Dr. Reed in March 2010, indicating that Belcher was suffering from low back pain.

Regarding her cervical fusion, Belcher does not cite to any records indicating that she had the surgery or received treatment in relation to the surgery between July 2008, and September 2010. Rather, she argues that "[b]ecause [she] did not have a cervical fusion between her September 30, 2010 date last insured and March 2011, the March 2011 x-rays prove that she had a cervical fusion between . . . July 18, 2008 and her September 30, 2010 date last insured." Belcher's Br. at 5. The March 2011 x-rays, however, prove nothing regarding timing, and the Court will not assume, without evidence, that the cervical fusion occurred between July 2008, and September 2010, or that Belcher received treatment in relation to a cervical fusion during that time period. Belcher's counsel's statement that the surgery occurred between July 2008 and September 2010, and not between September 2010, and March 2011 (or some other period of time), is unsupported. Simply put, the x-ray does not indicate that Belcher's back impairment was severe during the time period in question, and the ALJ did not err in failing to mention this record in her decision.

Dr. Reed's notes concerning Belcher's back pain and radiculopathy also do little for Belcher's argument. Dr. Reed's notes on September 30, 2009, indicate that she requested a physical therapy consult to treat Belcher's "lower back pain." Tr. at 512. Dr. Reed, however, described Belcher's back pain as "not . . . severe," and she provided no other treatment (i.e., no prescription, injection, testing, etc.) at that time. *Id.* Six months later, on March 10, 2010, again Dr. Reed treated Belcher for low back pain and referred her to physical therapy for treatment. Once again, however, Dr. Reed noted that Belcher's back pain was not severe, and no further treatment was provided. *Id.* at 217.

6

The two notes from Dr. Reed are not "objective medical evidence." They are not "signs" (there is no indication that Dr. Reed performed any sort of "diagnostic techniques" to diagnose Belcher with radiculopathy or lower back pain), and they are certainly not "laboratory findings." By all accounts, they are simply reports of Belcher's subjective complaints (i.e., symptoms). These specific records also do not indicate that Belcher's back impairment was severe, and the ALJ did not err in failing to mention these records in her decision.

Lastly, Belcher argues that the ALJ incorrectly alleged that her attorney failed to assert back and/or neck impairments in his pre-hearing memo to the ALJ. Indeed, Belcher notes that her attorney referred to "low back pain" and a "herniated cervical disc" in the memo. While this is true, counsel, in bold letters, stated in his opening paragraph that Belcher was "no longer able to work due to congestive heart failure, hypertension, diabetes, gastroparesis, and rectal surgery." Tr. at 206. There is no mention of any back and/or neck problem in his opening paragraph. While there is mention of Belcher's low back pain and a herniated cervical disc later in the memo, there is simply no indication that those issues were severe. Thus, the ALJ did not err in noting that Belcher's attorney failed to allege any back and/or neck impairments in his pre-hearing memo.

Notwithstanding the foregoing, the ALJ properly considered Belcher's neck and back impairments, but (correctly) found them to be non-severe. *See* 20 C.F.R. § 404.1512(a) ("We will consider . . . impairment(s) you say you have or about which we receive evidence.").

Based on the foregoing, remand is not warranted.

## VI. CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

7

SO ORDERED: 5/20/15

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.